Mrs. Arthur BACH, Appellant,

v.

G. Frank VAUGHN, Jr., et al., Appellees.

Court of Appeals of Kentucky.

March 23, 1962.

Lawrence C. Jenkins and William S. Black, Lexington, for appellant.

Joseph L. Arnold, Lexington, for appellees.

CULLEN, Commissioner.

During a nine-year period, from 1944 to 1953, the James H. Alexander farm and the Arthur Bach farm were supplied with water of the Lexington Water Company from a line that crossed the farm of G. Frank Vaughn and extended through the Alexander and Bach farms. For the first seven years of that period W. S. Rogers also received water from an extension of the line into his farm. There were meters at the points of entrance of the line to each farm but except for one reading in 1946 the meters at the points of entrance to the Bach and Rogers farms were never read.

Pursuant to a somewhat loose understanding with his neighbors that they would reimburse him for the water used by them, Vaughn paid the water company for all the water used by all four farms during the nine-year period. After the meter readings were made in 1946 Bach and Rogers paid Vaughn the amounts they owed according to the meter readings, but Alexander refused to pay, claiming that the meters inaccurately showed a use of water by him far in excess of his actual use. Thereafter, until new water lines were installed in 1953, none of his three neighbors paid Vaughn anything, although from time to time each expressed a willingness to pay the amount properly determined to be owed by him.

Finally; in 1957, Vaughn brought this action against Alexander, Rogers, and Mrs. Bach (Mr. Bach had died in 1952). Pursuant to the report and recommendations of a trial commissioner who heard extensive proof, judgment was entered against Alexander for $916.83, against Rogers for $770.21, and against Mrs. Bach for $4370.99. Alexander and Rogers paid the amounts adjudged against them, but Mrs. Bach was dissatisfied and has appealed.

Mrs. Bach's first contention is that the water debt was that of her husband, and since there was no allegation or proof that she had inherited any assets from him she could not be held liable for the debt. It appears that this contention is in the nature of an afterthought because the record clearly reflects that up until the time in the lawsuit when the commissioner's report was filed all of the defendants were taking the position that the plaintiff had a just claim for the total amount he had paid the water company and the only question was the proper apportionment of the debt among the three defendants. None of the defendants pleaded the statute of limitations although it appears that the statute would have been a bar to the major portion of the plaintiff's claim. The record indicates that the parties had proceeded on the basis that no technical defenses would be asserted.

Apart from the fact that the issues in the case seem to have been confined by tacit agreement to the single question of how to apportion the water bill, we think the evidence warrants the conclusion that the debt for water used on the Bach farm was just as much Mrs. Bach's as it was her husband's. The evidence indicates that Mrs. Bach was at least a part owner of the farm during the period in question, because her testimony was that "we" bought the farm, "we" ran a dairy, etc. Furthermore, she testified that she had always expected and intended to pay for whatever water the

meter showed was used on the Bach farm. In our opinion the circuit court correctly adjudged a personal liability on the part of Mrs. Bach.

The second contention of Mrs. Bach is that the evidence was not sufficient to support a specific finding as to the amount of water used on the Bach farm. We have read all of the evidence and we think it is sufficient. Of course the circumstances were such that absolute accuracy in number of gallons could not be achieved. But the evidence furnished a reasonably satisfactory basis for estimating the amounts of water used on the Alexander and Rogers farms, thus enabling an approximation to be made, by process of elimination, of the amount used on the Bach farm. There was substantial evidence as to the extent of the water-using operations and activities on the Bach farm. Also there was evidence that the Bach farm received some water through a pipe that bypassed the meter at the entrance to the farm, so that the meter reading taken in 1946 could not be considered an accurate basis either for measuring use prior to that time or for estimating subsequent use.

As hereinbefore stated, the Bachs paid, in 1946, the amount owed by them according to the 1946 meter reading. However, in the judgment in the instant action Mrs. Bach was charged with a portion of the amount that the meter reading indicated was chargeable to Alexander. This was on the basis that the meter reading was inaccurate because some of the water shown by the meters to have been used on the Alexander farm actually was used on the Bach farm, by reason of the fact that one pipe serving the Bach farm bypassed the meter. Mrs. Bach contends that the payment made by the Bachs in 1946 constituted a settlement of accounts as of that date. We think the answer to this is that the evidence does not establish that there was any agreement to settle on the basis of the meter readings alone. The Bachs and Rogers

knew that Alexander was protesting the amounts shown by the meter readings, and they knew that Vaughn expected to be paid by someone for all of the water used on the three farms. It is not reasonably to be considered that the parties intended the meter readings to be treated as conclusive in the face of a showing that they were incorrect. The agreement between the parties was a gentlemen's agreement between friendly neighbors, and it is clear that each intended to do what was right.

The judgment is affirmed.